John W. Getchell v. Thomas H. Benton.

[Filed December 22, 1890.]

Internal Improvement: What is Not: A Beet Sugar Man-
ufactory which does not manufacture sugar from beets for
toll, although propelled by water power, is not within legisla-
tive control by virtue of any law of this state, and is, therefore,
*held*, not a work of internal improvement within the meaning
of the constitution or statute.

Original application for injunction.

*B. B. Willey*, and *Talbot & Bryan*, for plaintiff, cited, on
the point discussed in the opinion, cases there referred to.

*William Leese, Attorney General, H. C. Brome*, and *N.
D. Jackson, contra*, cited on the same point: *U. P. R.
Co. v. Colfax County*, 4 Neb., 450; *State v. Adams County*,
15 Id., 568; Angell, Water-Courses, sec. 466; *Olmstead
v. Camp*, 33 Conn., 532; Lewis, Eminent Domain, sec.
180; *Head v. Amoskeag Mfg. Co.*, 113 U. S., 9; *Hankins
v. Lawrence*, 8 Blackf. [Ind.], 266; *Boston, etc., Corp. v.
Newman*, 12 Pick. [Mass] 467.

Cobb, Ch. J.

This cause was submitted upon an agreed statement of·
facts, of which the following is the substance:

First—The plaintiff is, and, for more than one year last
past, has been a citizen, a resident, freeholder and tax-
payer of the city of Neligh, in the county of Antelope.

Second—The city of Neligh at all the dates hereinafter
mentioned has been, and now is, a city of the second class,
with more than one thousand and less than five thousand
inhabitants, duly incorporated, organized, and existing un-
der and by virtue of the laws of this state.

Third—That on the 20th day of May, 1890, said city of Neligh submitted the question of the issuing of the bonds of said city to the amount of fourteen thousand eight hundred dollars to a vote of the legal voters of said city in the manner provided by law.

Fourth—More than two-thirds of the votes cast at said election being in favor of said proposition, said city council did, subsequent to said election, cause said proposition and the vote at said election to be entered upon the records of said city, and a notice of the adoption of said proposition to be published in a newspaper of said city, and thereafter and on the first day of June, 1890, the authorities of said city, in the manner provided by law, issued said bonds.

Fifth—Said bonds have been delivered by the corporate authorities of said city to the defendants, the auditor of public accounts of this state, for the purpose of registration and said defendant will, unless enjoined therefrom by the order of the court, register said bonds.

Sixth—Plaintiff claims:

1. That the purpose for which said bonds were issued, as shown by the proposition and notice of election, is not to aid a work of internal improvement within the meaning of the laws of this state.

2. That the corporate authorities of the city of Neligh have no authority, under the law, to issue bonds in aid of a work of internal improvement to be located outside of the corporate limits of the said city.

Seventh—The above claims of plaintiff, as set out in the sixth paragraph of the stipulation, are denied by defendant, and the questions, thus presented, are the only matters in controversy between the parties, it being agreed that all the requirements of law with respect to the voting of bonds to aid works of internal improvement in the cities of this state have been complied with.

Upon the submission of the case, the respective parties, by their counsel, filed exhaustive briefs on each side, which

were carefully examined and considered, at our consultation, and we were all of the opinion that the bonds could not be sustained.

The authority of statute, relied upon to justify the issuance of the bonds, is found in an act passed by the legislature in 1869, and which now constitutes section 1 of chapter 45 of the current compilation of the statutes. This section provides that "Any county or city of the state of Nebraska is hereby authorized to issue bonds to aid in the construction of any railroad, or other work of internal improvement, to an amount to be determined by the county commissioners of such county, or the city council of such city, not exceeding ten per centum of the assessed valuation of all taxable property in said county or city; *Provided,* The county commissioners or city council shall first submit the question of the issuing of such bonds to a vote of the legal voters of said county or city in the manner provided by chapter 9 of the Revised Statutes of the state of Nebraska, for submitting to the people of a county the question of borrowing money."

Chapter 57 of the Compiled Statutes has also an important bearing upon the question involved. Section 1 of this chapter provides that "If any person desiring to erect a dam across any water-course for the purpose of building a water grist, saw, carding, or fulling mill, or of erecting any machinery to be propelled by water, be the owner of the lands on which he desires to build such mill or erect such machinery on one side of such water-course and not of the lands on the opposite side against or upon which he would abut his dam; or if any person be the owner of the lands on which he desires to erect any such mill, or machinery, on both sides of such water-course; or if any person shall have erected such mill and mill-dam on his own lands, he may file a petition for leave to build or continue such mill-dam, and a writ of *ad quod damnum*, in the district court of the county, where such lands lie,

against the owners or proprietors of the lands above and below such dam, which are, or probably will be, overflowed or injured thereby, or against or upon which he may desire to abut his dam." The succeeding twenty-five sections are devoted to matters of procedure and detail. Section 27 provides that "All mills within this state, now in operation, or which hereafter may be put in operation, for grinding wheat, rye, or corn, or other grain, and which shall grind for toll, shall be deemed public mills." The remaining six sections of the chapter are devoted to prescribing the duties of the miller at such mill, providing for the fixing of the rates of toll and other matters of regulation, but all confined to public mills for grinding grain.

In the case of *Traver v. Merrick County*, 14 Neb., 327, this court, construing the two chapters of the statute, above cited, and in part copied, held that "A water grist mill erected for public use, the rates of toll to be determined by the county commissioners, and being subject to regulation by the legislature, is a work of internal improvement within the meaning of the act of 1869, and bonds voted to aid its construction are valid."

The case of the *State v. Adams County*, 15 Id., 569, was an original application in this court for a *mandamus* to issue to the county commissioners of Adams county to compel them to levy a tax to pay the interest on a certain bond, one of a series of bonds issued by the county commissioners of said county upon an affirmative vote of the electors of Juniata precinct, in said county, for the issuance of $6,000 in bonds to aid in the erection of a steam grist mill. The writ was denied, the court, in the syllabus, holding that "there is no statute in this state authorizing the voting of aid to steam grist mills and bonds voted for that purpose are invalid." The opinion reviewed to some extent the case of *Traver v. Merrick County, supra*, and said : "The decision in that case is based almost entirely upon the

statute authorizing the condemnation of private property for the purpose of erecting dams and overflowing lands in order to obtain power to propel mills." Now, although beet sugar mills are not specifically mentioned in section 1 of chapter 57, the statute referred to in the opinion quoted, yet the machinery for their propulsion by water is as clearly within the language of the section, "any machinery to be propelled by water," as though specially mentioned by name, so that, as the case of *Traver v. Merrick County*, *supra*, rests almost entirely "upon the statute authorizing the condemnation of private property for the purpose of erecting dams," etc., other reasons must be found for excluding beet sugar mills from the benefit of county or municipal aid, for, as we have seen, machinery for their propulsion by water is equally within the language of the act, and, if sugar is as much a necessary of life as flour, which, I think, no one will doubt, it is equally within its spirit. But this reason is found in the provisions of section 27 and the following sections of the same chapter. By these provisions, as we have seen, all mills for the grinding of wheat, rye, corn, or other grain, and which shall grind for toll, shall be deemed public mills. The succeeding sections make it the duty of the owner or occupant of every such public mill to grind the grain brought to such mill in due time and "as the same shall be brought"—in other words to give every mill-boy his turn; to cause a statement of the rates of toll by him charged for grinding and bolting the different species of grain to be posted up in the mill, "and the county commissioners of each county shall establish and regulate the amount of toll allowed to be charged." They also fix the liability of the miller for the safe keeping of all grain, grain bags, and casks brought to the mill, and for taking a greater toll than that fixed by the county commissioners, or as contained in printed or written statements required to be posted up in the mill. And, finally, section 33 prescribes the manner and method by which any such

public mill may be divested of such public character and become a private mill, but with the proviso "that no party shall change his mill to a private mill until fully reimbursing all parties who have assisted in its erection."

None of these provisions apply to a beet sugar mill, nor a beet sugar factory, and it is for the reason that such beet sugar factory, when erected, would not, by virtue of any statute or law of this state, be subject to the regulation of any board, or officer of the state, county, or city, but would be private property, pure and simple, that it is held not to be a work of internal improvement within the meaning of section 1, chapter 45, Compiled Statutes. Counsel for defendant, in the brief, quote a portion of section 1, chapter 57, and from its provisions placing water power for the propulsion of saw, carding, and fulling mills, or "any machinery propelled by water," upon the same footing with grist mills. So far as the right to the writ of *ad quod damnum* is concerned they argue that the act quoted from, *ex vi termini*, subjects all machinery propelled by water to legislative control. The argument is ingenious and it would not be strange if, in this age of enterprise and adventure, it did not find some support in the authorities. But where a theory tends directly to the subversion of private rights, courts will, and should, be slow to follow them.

It will be observed that the mere fact of mills for grinding grain being propelled by water does not make them public mills, or bring them within the operation of any legislative regulation; but in order to make them public mills or bring them within the operation of the legislative regulations, or to authorize the county commissioners to establish and regulate the rates of toll to be charged, such mills must grind for toll. Indeed, were it a question of first instance, and not indirectly affected by former decisions, I would be of the opinion, from a consideration of the lan-

guage of sections 27 and 33 of the chapter above cited, that
the grinding for toll, and not their being propelled by water,
is the test of such mills being public mills. The language of
the statute applies as well to mills run by any other power
as those run by water; and the distinction depends solely
upon the fact that the section declaring "all mills   *   *   *
shall be deemed public mills" occurs in the same chapter
with the sections providing for the writ of *ad quod dam-
num*; and I should add the argument used in the cases of
*Traver v. Merrick County* and *State v. Adams County, supra,*
based upon the more permanent and continuing character
of water over steam power, as well as its acknowledged
cheapness.

There is certain language used in the opinion last above
cited which may be understood to mean that the provisions
of the statute authorizing the use of the power of emi-
nent domain in behalf of the water mills thereby places
their regulation under legislative control. The language
used was not intended, I am sure, to bear such construc-
tion; for, as we have seen, the framers of the statute
deemed it necessary to use express language for the pur-
pose of placing certain of the beneficiaries of the power
of eminent domain under legislative control, and that
with such discrimination as to repel the idea that they
were only supplementing that which had already been
done indirectly or by implication.

The writer has but little knowledge of beet sugar manu-
factories, or of their manner of doing business; but he
is sure that their operators do not, as a rule, manufacture
beets into sugar for toll, and hence that such manufactories
would not be under legislative control, and so, under the
constitution and statutes of this state, and the previous
decisions of this court, are not works of internal improve-
ment.

Having come to the above conclusion upon the second
point argued by counsel for plaintiff in the brief, it is not

deemed necessary to discuss the other questions argued. An injunction will be granted as prayed.

INJUNCTION GRANTED.

THE other judges concur.